Our next case of the afternoon is People of the State of Illinois v. Christopher Young, 414-0247. For the appellant, Mr. Jordan, for the athlete, Ms. Wyckoff, let's get started by you buttoning your top button. Now I'm really rather kind, but if I have to have my button buttoned, then you do too. Did you make it? Is that better, Your Honor? Thank you, Counsel. May it please the Court. Counsel, I'm Jason Jordan from the Appellate Defender's Office, and I represent Chris Young in this matter. This is a case where the evidence was closely balanced because credibility was the only basis upon which the jury had to decide Young's guilt or innocence. Here there was an altercation at True Value Hardware Store. Mr. Young testified at trial that Mr. Skinner was the initial aggressor. Mr. Skinner testified at trial that Mr. Young was the initial aggressor. In addition, a cashier from True Value Hardware Store testified, Kayla Petty. Her testimony was biased because she had a motive to implicate Mr. Young as the initial aggressor. She had been disciplined at her work because of Mr. Young. Did she get in trouble for letting him take scrap metal at an earlier time? Is that what it was? That's correct, Your Honor. And on the day of the altercation, Mr. Young was asking for scrap metal, and Ms. Petty said that he couldn't have it. Now, because the evidence was closely balanced and credibility was such a big issue here in this case, I want to start with the prosecutor's errors that go directly to credibility. The first error was when the prosecutor was eliciting testimony from the deputy. The prosecutor said, quote, Now, have you dealt with other victims of physical confrontations in the years you've been a deputy? The deputy answered, Yes, I have. The prosecutor asked, And was his demeanor consistent with the victim's presentation immediately after a confrontation? Eliciting this testimony painted the deputy as an expert on credibility. In addition, it was basically a comment from one witness on the veracity and the truthfulness of another witness, which is improper. A second testimony that occurred was when the prosecutor Well, he says, was his demeanor consistent? What does that got to do with his veracity? Well, Your Honor, the deputy wasn't And I'm not saying the comment was proper, but I'm just saying if it's talking about demeanor, the guy was upset. Right. And we conceded that the deputy was allowed to testify that he was disoriented, shaken, different things like that. But once he said that his demeanor was consistent with the victim, he's basically saying that Mr. Skinner is telling the truth. And the second improper testimony that the prosecutor elicited was when the prosecutor asked, and quote, to the deputy, And how did you check for the address? And the deputy responded, We had it on file at the sheriff's office. Now, this implies and infers that Mr. Young had a record at the sheriff's office. Now, the police are allowed to testify to steps of an investigation, but here that testimony was completely irrelevant. There was never a question about whether the deputy interviewed Mr. Young in his house. And there was never a question of how he got there. And the only purpose of it would have been to prejudice the testimony of Mr. Young himself. And since Mr. Young did testify, his credibility was at issue. The second error would be, that goes really to the heart of credibility, is when the prosecutor told the jury that the defense counsel was lying. The prosecutor said in closing rebuttal, referring to defense counsel, But he's scratching. Think about that. He's making it up. Much like his client made up the story that was plausible to him, but maybe kind of not tethered to reality. End quote. Here, the prosecutor basically said that defense counsel was lying. And that the defendant was lying. Defense counsel here used the term scratching six different occasions. And he defined scratching for the jury when he said, He's scratching. Think about that. He's making it up. Much like his client made it up. The third error that I wanted to address is also from the closing rebuttal, where the prosecutor asked the jury to send a message. The prosecutor in closing rebuttal said, quote, Now ultimately, you're going to send a message with a verdict. What kind of community do we live in? Do we live where the strong bully the weak? Where the loud and the angry take advantage of the meek? Those are the rules of the jungle. Do we have a community where one has a right to run an errand, go to the hardware store, pick up the stuff he needs to pick up, not be accosted, assaulted, or battered by somebody? Your verdict's going to send a message. It's going to reinforce the basic rules of a civilized society that we learned in kindergarten. This is improper for a couple reasons. First, it asked the jury to deter general crime, general crime in the community, which is improper. It's okay for the prosecutor to ask the jury to deter the future potential crimes of Mr. Young, but it wasn't proper for the prosecutor to ask him to send a message to the entire community to protect society. Otherwise, it could have spiraled out of control into chaos, into the rules of the jungle. Also, it created an us-versus-them mentality when the prosecutor said it's going to enforce the basic rules of society that we learned in kindergarten. And ultimately, it took the jury away from their rational role as finders of guilt or innocence. That was their duty here.  Their duty was to figure out who was the initial aggressor in this altercation. Was it Mr. Young or Mr. Skinner? And the last error I want to talk about today is the burden-shifting error. In closing rebuttal, the prosecutor said, I don't think they met their burden of proving he had a realistic concern about a threat to his property, enough so to be able to punch, shove, hit Mr. Skinner, nor a threat to himself in order to justify pushing, shoving, hitting Mr. Skinner. This is a misstatement of the law because the state has the burden to disprove self-defense. And here it also shifted the burden onto the defendant. In addition, in a closely balanced case like this, we can infer from the jury question at deliberations that they thought this was possibly a closely balanced case. When they asked to see Mr. Young's testimony again. And so because many of these errors go to the heart of credibility, and credibility was the only basis upon which the jury had to decide this case, we would ask that you would find plain error occurred under the first prong. To the second prong, we would say that these errors combined cumulatively, there's a pattern of misconduct, and that it goes to the heart of the judicial system. Most notably, the burden shifting, and also calling defense counsel a liar. Mr. Young had a right to an attorney, and he had a right to a believable attorney. And here that was denied him. Well, he never used the term liar, did he? That's just your interpretation of the language that the prosecutor did use. That's correct, Your Honor. The one that I pointed to that was most closely there was when he said, quote, but he's scratching, think about that. He's making it up, much like his client made up the story. Thank you, counsel. You may proceed. Thank you, Your Honor. May it please the court, counsel. Your Honor, defendant here has argued that the state engaged in prosecutorial misconduct such that the cumulative effect of all these errors has rendered defendant's trial unfair, and that it should be reversed. Your Honor, the state disagrees for three important reasons. Your Honor, first. Let's stop and which part do you disagree with? With the fact that the cumulative impact of the prosecutor's errors weren't reversal in this case. The state contends that the prosecutor did not err in this case in committing prosecutorial misconduct. You're suggesting that the prosecutor did not commit error? Correct, Your Honor. Not just that he committed error, but the evidence is sufficient to deem that there was a fair trial. Correct, Your Honor. What about the burden shifting? Do you concede that was an improper statement? Yes, Your Honor. I see when it's taken by itself, the statement where the state said, and I quote, I don't think they met their burden of proving he had a realistic concern about a threat to his property. Your Honors, what was going on in this case, the defendant raised the affirmative defense of self-defense. So as the burden that was taken on by the state, which the state admitted this burden multiple times throughout the pendency of this case, during jury selection, during opening arguments, during closing statements, and again on rebuttal, the state maintains the burden of proof in this case. The state had to prove that the defendant engaged in an aggravated battery of the victim, Mr. Skinner, in addition to disproving that Mr. Skinner, the defendant here, acted in self-defense. Your Honor, when the state said, I don't think they met their burden of proving he had a realistic concern about a threat to his property, Your Honor, the defendant must establish that he acted reasonably in order to warrant a self-defense jury instruction in this case. Counsel, so you're saying that it's okay for the prosecution to tell the jury that the defendant has not met a specific burden in a criminal case? Your Honor, what I'm saying is that the defendant has to establish some evidence that he acted reasonably. Does that give the state the right to tell the jury that the defendant has to prove something? Your Honor, in this case, they did, and I want to consider these closing arguments in total. During the defendant's closing arguments, defense counsel stated, quote, what we have to prove to you is that there was an action that Mr. Young took in response to something that he believed was a threat to him or his property. Your Honor, if that's true, the defendant here needed to establish that he did act in self-defense. The state does maintain the burden that they have to disprove that defendant acted in self-defense, but there must be some evidence to suggest that self-defense was warranted in the first place. But, counsel, would you agree that even if defense counsel is confused about the burden and improperly shifts the burden, that still does not give the state the right to improperly shift the burden and instruct the jury or tell the jury, they're not instructing them, tell the jury that they have a burden, that they haven't met their burden, that the defense hasn't? Your Honor, I understand your concerns, and I agree that this probably wasn't worded the best way that it could have been worded. It was improper, counsel. It was improper. All right. I understand Your Honor's concerns here. However, the jury was properly instructed in this case multiple times. The state, they said multiple times the burden lays with the state to prove aggravated battery, to prove that the defendant did not act in self-defense. The state's attorney in this case said this during jury selection, during opening statements, during closing, and during rebuttal, in addition to the jury instructions that were provided to the jurors by the trial court. And we must presume that the jury followed those instructions when they received them. And so basically, is your position that while it was air, when we consider the entire context of the fact that the instructions were given properly, the entire closing argument, that it doesn't rise to the level that will require reversal even though it was air? Yes, Your Honor. The standard that we have to consider this case under, first, we have to consider whether the prosecutor intentionally engaged in prosecutorial misconduct. Stop right there. I don't think it is believable. I don't think it is credible. Those are both improper. A prosecutor, an assistant prosecutor, a young prosecutor, an old prosecutor, whoever it is, doesn't get to say what they believe. We're not interested. Those are both improper. They could be air sufficient to reverse. We're going to send a message. That comes up in other appellate cases where it's said, You can't say that to the jury. That's not what's going on. Strong bully the weak. Loud and angry. Rules of the jungle. That is all improper argument. Your Honor. It is improper. It is erroneous. One question might be, did it deprive the defendant of a fair trial? This is like a text from a beginning prosecutor course about the things you can't do. Your Honor, I understand your Honor's concern. I don't want you to misunderstand it. I want you to concede it. Are you willing to concede that those remarks were improper? Not that they caused reversal, but that they were improper. Your Honor, I will concede that the prosecutor's statements that the defendant fabricated his theory of defense, that was improper, yes. I agree with Your Honor. Well, how about accusing the other lawyer of making it up? Yes, Your Honor. He's just making it up as he goes along. Yes, Your Honor. The defense counselor or the state's statement, obviously the defendant doesn't want to get convicted. That's a motivation to make up, fabricate, lie, misremember, misrecall. Your Honor, that's improper. How about what other things I said? Your Honor, that's... Is it okay for the prosecutor to say, I don't think the defendant is telling the truth. I don't think what he says is believable. I don't think it's credible. Is that appropriate? Your Honor, it's appropriate for the prosecutor to comment on the evidence in this case. Your Honor, it's correct that... I know that boilerplate rule. I'm specifically asking you here. If you were this prosecutor's supervisor, would you tell him, her, him or her, don't say those things. Your Honor, I agree with you. Those things should not have been said in this case. I do want to discuss briefly, as you brought it up, the send a message quote. And with all due respect to my opposing counsel, he did not read the quote in its entirety. And I would like to read the quote in full to your honors now. The state said in closing arguments, now, ultimately, you're going to send a message with a verdict. What kind of community do we live in? Do we live where the strong bully the weak, where the loud and the angry take advantage of the meek? Those are the rules of the jungle. Do we have a community where one has a right to run an errand, go to the hardware store, pick up the stuff he needs to pick up, not be accosted, assaulted, or battered by somebody? Your verdict's going to send a message. It's going to reinforce the basic rules of a civilized society that we learn in kindergarten. I'm sure we've all had it said many, many times by your parents and teachers. Keep your hands to yourself. Don't touch other people. They're simple rules to follow, and we're all supposed to do it. Guess who didn't? Your Honors, I want to compare that statement made by the prosecutor in this case to what amounted to reversible error in People v. Liner, which the defendant relies upon in his case. In People v. Liner, the prosecutor said as follows. They stuck the gun in his little girl's face. They tried to kill her. And when you convict him, you make this whole country safe for all the Kayla Bakers that have a right to be asleep in their home without having a guy like that come in and shove a gun in her face. When you find the defendant guilty of armed robbery and home invasion, you're not just protecting Kayla Baker. You're protecting every child and every citizen and every home in this country. Your Honors, it's permissible for the prosecutor to ask the jury to send a message to this defendant. That's what the prosecutor did here. He discusses the Golden Rule, and he says we're all supposed to do it. We're all supposed to follow the Golden Rule. Guess who didn't? He asked, guess who didn't, which means he was talking about the defendant. Guess who didn't follow this rule? The defendant didn't follow this rule. Your Honor, PEOPLE v. Liner also stands for the proposition that the state can ask for the jurors to send a message to the defendant specifically. Then why are you talking about the community? Because, Your Honor, I'm trying to distinguish what we have in PEOPLE v. Liner which the defendant relies upon, where clearly the prosecutor's statement in that case was aimed at the community. He said you're protecting every child and every citizen. That's what it is here. We're sending a message. What kind of community do we live in? You're sending a message to the community that we can't do this. Your Honor, but in his statement, when you read further, he's talking about this incident here. He says go to the hardware store, pick up the stuff he needs to pick up. He's talking about this case. He's talking about the defendant. And when you read the statement in full, when he ends it, guess who didn't? He's aiming that at the defendant. He's not aiming that statement at the community as a whole. Does the defendant live in the jungle? Your Honor, it's not my belief that he lives in the jungle. I agree with you there. However, Your Honor, what we have with these cases where the court has found prosecutorial misconduct is the prosecutor has taken some sort of additional step, which we don't have here. For example, in Liner, the prosecutor, during his closing arguments, wrote guilty on a whiteboard and drew an arrow pointed at the defendant. The prosecutor took that extra act to show that he intentionally engaged in this misconduct. Your Honor, additionally, in People v. Blue, the Illinois Supreme Court case, which is so critical to prosecutorial misconduct cases, there the prosecutor created a mannequin, put a bloodied and brain-spattered police officer's uniform on a mannequin for the jurors to view. Your Honor, that's not what we have here. It's not nearly as egregious as these cases which we have before us and which were cited by the defendant in his brief. Your Honor, in terms of whether the evidence here was closely balanced or not, the defendant is correct in asserting that there was no tangible evidence. The jurors didn't have surveillance footage or photos for them to view. It was solely based on testimony in this case. But, Your Honor, what we have here is the testimony of Kayla Petty, the cashier. She was there. She witnessed the defendant's demeanor. She stepped in between this confrontation. We also have the testimony of Deputy Rhodes, the first responder police officer. In addition to the testimony of Timothy Skinner, the alleged victim in this case, the defendant himself also took the stand and testified in this case. So while the evidence that we have is all testimonial in nature, what we have is the testimony of three witnesses whose testimony all corroborated one another's and the defendant's testimony, which wasn't corroborated by anything in this record, Your Honors. Thus, the evidence in this case was not closely balanced. And despite counsel for the State's errors regarding fabricating the theory of defense and alleged burden shifting, that doesn't amount to reversible error in this case because the evidence was not closely balanced. Your Honors, and furthermore, the defendant did receive a fair trial in this case where the jury was properly instructed. And, Your Honors, there were no objections made by defense counsel to any of these statements during this case. Your Honors, I submit to you that if when the prosecutor was saying these things, if it came across as so bad and so egregious, surely defense counsel would have objected to these statements, and he didn't. And, Your Honors, we have very experienced counsel for both the State and for defendant in this case. We have the State's attorney and the public defender of Edgar County are both counsel in this case. And, Your Honors, defense counsel didn't object to any of these statements on the record. Counsel, I mean, we can't rely on defense counsel in determining if something is proper. I mean, the burden shifting is so incredibly basic that you can't justify it by saying, well, an attorney who's been practicing 20 years didn't object. And I think the concern is that, you know, as a former prosecutor myself, we want prosecutors to win these cases and make it stick and not have to come back on issues so basic as the ones in this case. I mean, it doesn't, it's not appropriate. It doesn't take that. You have a strong case. Why mess it up doing things like this? Right, Your Honor. Your Honor, I think here I understand that we're not considering ineffective assistance of counsel in this case. And I do agree with Your Honor that, you know, a lot of times defense counsel doesn't object when they should have objected. But here, Your Honor, additionally, the trial court didn't interject either in what was going on. Your Honors, we have to consider these closing arguments and the arguments that were made as a whole and in context. Your Honors, for example, in reading blue and in reading liner, you just get a really bad feeling when you're reading this. What's happening here isn't right. Your Honors, when you read the closing statements in full, when you read the state's direct closing arguments, when you read defense counsel's closing arguments, and then again when you read the state's rebuttal arguments, you don't get that terrible feeling that you get in cases like blue and liner where the prosecutor's statements are so egregious. In addition to the prosecutor taking some sort of additional action, writing guilty on the white board, bringing in a brain-spattered police officer mannequin on display in front of the jurors. Your Honors, that's just not what we have in this case. What we have, Your Honors, is the prosecutor making misstatements of law which don't rise to the level of reversible error in this case. Your Honors, the jury was properly instructed. There were no objections, thus we consider this in terms of plain error and whether the evidence was closely balanced. Here we have three witnesses for the state versus the defendant's testimony. The three witnesses for the state, their testimony was all corroborated one another. And the jurors clearly believed in rendering their verdict that they found the state's witnesses to be more credible than the testimony of the defendant. Your Honors, I realize we've covered a lot. I just want to give you an opportunity, if there's any other statements that Your Honors are concerned about, to address them at this time. I know we've covered defendants' questions about burden shifting and fabricating the theory of defense, which the state does agree were improper statements. The state does maintain that the prosecutor's encouraging the jury to send a message is proper and that the prosecutor was asking the jury to send a message to this defendant. It is improper, such as in Leiner, for the prosecutor to ask the jurors to send a message to the community. But when read in total, that's not what the prosecutor asked the jurors to do here. Your Honors, very briefly in terms of the Deputy Rhodes' testimony, Your Honors, here again, what we're comparing this testimony to where the deputy essentially said that the victim's presentation was consistent with the presentation of a victim after a crime. Your Honors, the cases that are cited by the defendant and the precedent set forth by both this court and other courts is this police lie detector test series of cases where essentially a police officer will testify, as Your Honors know, to whether he believed that someone, a statement, was truthful or not. Your Honors, that's not what we have here, because here, Mr. Skinner, he made no statement. Deputy Rhodes was the first responder after multiple 911 calls during this event. He testified that he believed that the victim, Mr. Skinner, was shaken and scared, and he's been around other situations like this, and he believed that Mr. Skinner was indeed the victim in this case. Your Honor, I'd like to compare that to People v. Munoz, which the defendant relies upon in his brief, where the prosecutor asked, in your mind, he never told you the truth, did he? And the detective said, no, sir. Your Honors, here, the prosecutor never asked Deputy Rhodes whether he believed that Mr. Skinner, the victim, was being truthful or whether he was being honest. Deputy Rhodes simply testified as to what his experience is and how that made him react to the situation at hand. An officer may describe the events which led up to an arrest, which was what he was doing in this case. Your Honors, because the jury was properly instructed and because the evidence was not closely balanced in this case, reversal is not warranted in this case. Although the prosecutor made misstatements of law, the overall cumulative effect of the prosecutorial misconduct does not exist in this case. The prosecutor did not commit misconduct when he made misstatements of law, nor did he create misconduct when he asked the jury to send a message to this defendant. And finally, the testimony of Deputy Rhodes was proper in this case. Your Honors, unless there are any further questions. I have an additional question. So what is the standard of review that we utilize in considering the closing argument and the allegations of impropriety? Your Honor, here because there are allegations of prosecutorial misconduct under Johnson, we have to consider whether the prosecutor intentionally committed misconduct. However, a mistake or a misstatement does not amount to prosecutorial misconduct. This court may invoke harmless error to determine whether the evidence was not closely balanced. That's from Blue, Your Honor. However, prejudice here is not the sole concern. This court does have to determine whether the defendant received a fair trial. Your Honor, for the reasons I've discussed today based on the testimony of Kayla Petty, the cashier, Mr. Skinner, the victim, and Deputy Rhodes, the evidence here is not closely balanced. The defendant had an opportunity to testify. And thus, he received a fair trial. So the abuse of discretion standard doesn't come in anywhere? Your Honor, here we consider this all under plain error because there were no objections that were made whatsoever. In this case, to any of these issues, they were not raised in a post-trial motion. So we're in the realm of plain error. Is the evidence closely balanced? And did the defendant receive a fair trial? And the State contends that he did. Your Honor, unless there's anything else, the State? Counsel, I can only speak for myself. Separate and apart from what the result in this case is going to be, I think after it's over, you ought to examine your argument, examine whatever decision there is. Win or lose, it doesn't matter. I think you've placed yourself in the position of defending inept and improper prosecutorial conduct beyond the burden-shifting. And the difficulty with that is it's not needed, it's not proper, it sabotages cases. It has exactly the opposite result of what the prosecutor thinks is going to happen by ascribing to some kind of eloquence or tactics that he or she saw on television. And you ought not be put in the position of having to defend those kinds of remarks. Thank you, Your Honor. Your Honor, for these reasons, we ask that you affirm the defendant's conviction. Thank you. Rebuttal. May it please the Court. As to the issue of was this closely balanced, and the State argues that it wasn't because the jury obviously believed and found the State's witnesses more credible, that's exactly the issue here is credibility. And these errors affected the credibility of the witnesses here. And so you can't just say because the jury found the defendant guilty, the evidence was not closely balanced. In addition, as far as the Liner case is concerned, it should be pointed out that in Liner, the prosecutor there never actually said the words, quote, send a message. That court said that, in effect, the prosecutor asked to send a message. Here, the prosecutor actually said the words, asked them to send a message. As far as the misstatements and the burden shifting, yes, the law was correctly stated and there were proper jury instructions given, but proper jury instructions do not always correct misstatements of the law. Are there any questions, Your Honor? There are not. Thank you. We'll take this matter under advisement and wait for the next session of court.